# TIBBALS ET AL. v. GRAHAM ET AL.

(No. 2129; January 9, 1940; 97 Pac. (2d) 673)

(Rehearing Denied March 5, 1940)

For the appellants, the cause was submitted on the brief of *John J. Spriggs* of Lander.

For the defendants and respondents, the cause was submitted on the brief and oral argument of *George F. Dobler* and *H. S. Harnsberger* of Lander.

PER CURIAM.

These proceedings by direct appeal seek the review of a judgment of the district court of Fremont County, dismissing appellants' action, and also an order made by said court declining to set aside said judgment. The parties will be referred to hereinafter as aligned in that court or by their respective names. The record submitted discloses the following facts:

The plaintiffs, Barney N. Tibbals and John J. Spriggs, brought suit in the district court aforesaid on December 15, 1938, to recover immediate possession of certain mining claims described in their petition, these properties being alleged to be in the possession of the defendant, Marshal Graham, as receiver of the Midwest Mines Corporation. Recovery of alleged damages is also sought in the action against the defendants, who are designated in plaintiffs' petition as "Marshal Graham, as Receiver of the Midwest Mines Corporation, and as receiver appointed in case 4561 of the District Court of Fremont County, Wyoming, and as asserted receiver for Federal Gold Mining Company, a corporation, and Morris K. Wilson, George C. Wilce, Gladys Spry Augur, as executors of the estate of John C. Spry, deceased, and Marshal Graham." Plaintiffs further ask that an accounting be had between them and said receiver; that plaintiffs' title to said properties be quieted; that defendants be enjoined from asserting any further right, title or interest in said premises and from further trespassing on plaintiffs' rights and properties during the pendency of the action.

Thereafter and on January 28, 1939, by his motion

filed in the district court aforesaid, said Receiver asked that an order be made dismissing the action mentioned above because there was no allegation in plaintiffs' petition that before the action was begun they had obtained due leave from the court appointing that official to institute and maintain it against him in that capacity, and that in fact such permission was never procured. On that date also Graham filed his individual answer, in form a general denial relative to said petition.

February 14, 1939, there was filed by plaintiffs an application for permission to continue the above entitled action against the said Receiver. The following day, to-wit, February 15th, counsel for all parties agreeing that the Honorable C. D. Murane, Judge of the Seventh Judicial District, might hear and decide the motion of the Receiver as aforesaid, after argument thereof, an order was entered sustaining said motion and dismissing plaintiffs' action at their cost. On February 23rd following, plaintiffs served and filed their notice of appeal to this court from said order.

Thereafter and on March 3, 1939, plaintiffs filed in said court their motion to vacate the order of dismissal just described and for permission to amend their petition by inserting an allegation that Hon. V. J. Tidball, Judge of the Second Judicial District, and presiding in Case No. 4561 of the District Court of Fremont County, Wyoming, wherein the Receiver aforesaid had been appointed, had made an order that the plaintiffs might continue the action as above mentioned to its final conclusion. This order of Judge Tidball's was set forth at length in plaintiffs' motion to vacate the order made by Judge Murane. Thereby it appears that it was ordered on February 27, 1939 that, "permission be given to said Barney N. Tibbals and John J. Spriggs, to continue and maintain said action No. 5651 to its final conclusion, upon condition, however, that the said

Honorable C. D. Murane, presiding in said case No. 5651, or any other judge who may hereafter preside therein shall find that the permission hereby given shall entitle said Barney N. Tibbals and John J. Spriggs to maintain and continue said action as now filed."

Plaintiffs' motion last above referred to, after argument by counsel had, was on March 15, 1939, by the court denied, Judge Murane presiding, and from this order plaintiffs also served a notice of appeal, which was filed March 21, 1939.

Subsequently and on April 12, 1939, appellants filed alleged specifications of error, two in number, the first one being to the effect that the court committed error in its order and judgment passed on February 15, 1939, dismissing the action of plaintiffs and taxing costs against them. Attached to this specification of error are some twenty-four alleged reasons and arguments relative thereto. The second assignment of error claims error on the part of the trial court in denying plaintiffs' motion to vacate the antecedent court order dismissing the case, made as related above, and attached to this specification of error are the same alleged reasons theretofore set forth concerning specification of error No. 1 and an additional specification, in purport that Judge Tidball had consented that the action might be maintained.

A careful examination of plaintiffs' pleading makes it plain that this action is one whose purpose is to take from the possession of the Receiver, Marshal Graham, the mining property mentioned above as placed in his custody by the District Court of Fremont County. It appears to be the chief contention of appellants, many times repeated in their brief and argument, that Graham, as an official of the District Court is a mere trespasser in holding and dealing with the property involved in this litigation, and the proposition is advanced, as stated in 23 R. C. L. 126, Section 134, that,

"a receiver may, of course, be sued without leave of court, when he is a trespasser." The quotation thus appearing in plaintiffs' brief does not go further. But upon perusal of the text just mentioned, we find therein appended to the statement aforesaid the following language:

"as, for instance, where the demand against him does not involve the administration of the trust committed to him, but merely arises from his having taken unlawful possession of property not included in the trust. But a receiver can never be treated as a trespasser for selling property in his possession pursuant to the order of the court by which he was appointed."

The text aforesaid cites in support of what is thus said two cases, viz., Hills v. Parker et al., 111 Mass. 508, 15 Am. Rep. 63; and Barton v. Barbour, Receiver, 104 U. S. 126, 26 L. Ed. 672. With the law as announced in those cases as applied to the facts therein appearing no controversy can be had.

The case of Hills v. Parker et al. was one where it was held that the owner of a railroad locomotive could maintain replevin for it against the agent of a railroad corporation whose property was in the hands of receivers, without obtaining leave of the court appointing them, if the corporation had no interest in the engine although used on the corporation's railroad line. The true import of the decision appears, when considered in the light of these facts and the following language from the opinion of the Supreme Judicial Court of Massachusetts in the case:

"The decree of a court of chancery appointing a receiver entitles him to its protection only in the possession of property which he is authorized or directed by the decree to take possession of. When he assumes to take or hold possession of property not embraced in the decree appointing him, and to which the debtor never had any title, he is not acting as the officer or representative of the court of chancery, but is a mere

trespasser, and the rightful owner of the property may sue him in any appropriate form of action for damages or to recover possession of the property illegally taken or detained."

The Barton v. Barbour case was an action for personal injuries by Frances Barton against a railroad receiver, one Barbour. These injuries had been incurred by her due to the derailment of a car in which she was a passenger in consequence of a defective rail in a railroad owned by the corporation in the hands of Barbour as such receiver. The latter pleaded that he was receiver of the railroad and that leave to sue him had not been procured by the plaintiff from the court appointing him. Plaintiff demurred to this plea and the trial court thereupon overruled the demurrer and entered judgment against plaintiff for costs. Affirming this ruling the national Supreme Court remarked in the course of its opinion:

"A suit, therefore, brought without leave to recover judgment against a receiver for a money demand, is virtually a suit, the purpose of which is and effect of which may be to take the property of the trust from the receiver's hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property. We think, therefore, that it is immaterial whether the suit is brought against the receiver to recover specific property or to obtain judgment for a money demand. In either case leave should be first obtained."

In Neiderjohn v. Thompson, 38 Wyo. 28, 264 P. 699, this court adverting to the general rule in receivership cases, requiring Court leave before suit brought, also pointed out that ordinarily a receiver could not be sued without the consent of the court appointing him, and it was there said that: "The court is bound to protect a receiver against useless litigation." See, also, High on Receivers, (4th Ed.) 293-294, Section 254.

In II Tardy's Smith on Receivers (2d Ed.) 2027, the text states:

"From a consideration of the decisions on this subject it is apparent that those holding that leave of the receivership court is essential to jurisdiction and those holding that want of such leave is not jurisdictional and merely constitutes an irregularity are not capable of being harmonized. The decisions are uniform, however, to the effect that where the purpose of the suit is to interfere with the actual possession of the receiver, leave of the receivership court to sue is necessary to maintain the suit."

This statement is supplemented by the same authority (Volume I, Page 222) in this wise:

"A claimant of real estate in the possession of a receiver will not be permitted to bring an action of ejectment against the receiver without leave of court, and the court will not as a rule allow such an action to be brought in a court other than that of the receivership."

In Tibbals v. Graham, Receiver of Midwest Mines Corporation, et al., 50 Wyo. 277, 62 P. (2d) 285, this court, speaking of the very property again attempted to be interfered with by the instant litigation, said:

"The record shows that the property was in the hands of the receiver and therefore in custody of the law. Even though plaintiffs had the prior valid lien, they were bound to recognize the fact of which they were well aware that the property was in custodia legis."

Applying the principles announced by these authorities to the facts appearing in the record before us, it is clear that the decision of the District Court relative to respondents' motion to dismiss plaintiffs' action was correct and that this is so for a number of reasons. No consent to sue the Receiver, Graham, had been first obtained by the appellants before the action was brought. The effect of their action if allowed, assum-

ing that it could be successful, would be to deprive the District Court of the administration of this property in the hands of its officer and prevent the court from marshaling the claims, including that of plaintiffs, as regards such property or the proceeds thereof and doing justice as between all concerned. The action at this time, being reviewed, is but an attempted relitigation of the same matters as were fully considered in Tibbals v. Graham, supra, and which were after thorough and careful examination determined against appellants. That this is the exact situation a perusal of the several opinions in that case will readily establish.

Concerning the second assignment of error, we are obliged to rule that it also is without merit. It is quite evident that the conditional consent in the order made by Judge Tidball left the matter of whether the appellants' action might thereafter be maintained solely to the discretion of Judge Murane "or any other judge" who might thereafter preside in the instant case. Judge Murane, following the rule laid by this court in Neiderjohn v. Thompson, supra, by ruling as he did upon appellants' motion to vacate the preceding order and judgment of February 15, 1939, was simply protecting the Receiver, Graham, against "useless litigation." As already pointed out, the present action was merely an attempt to relitigate matters already concluded by final disposition in the District Court of Fremont County and affirmed by this Court.

As we understand the matter no one disputes the prior lien claim of plaintiffs to the property affected or its proceeds if sold and if appellants will, without further delays like that caused by the attempted maintenance of the instant case, simply permit the District Court of Fremont County to proceed to sell (assuming that a purchaser can be found) the property involved and in the Receiver's charge herein and then proceed to adjudge their claim to the avails of said property, as

determined in our decisions in Tibbals v. Keys, 40 Wyo. 524, 281 P. 190, and Tibbals v. Graham, Receiver, supra, this long drawn out controversy touching these mining claims should be speedily ended to the manifest advantage of every one concerned.

The judgment and order of the District Court of Fremont County drawn in question by this appeal must be affirmed.

*Affirmed.*